(R.D. 11248)

LILLI ANN CORPORATION *v.* UNITED STATES

Entry No. 3343.

(Decided December 21, 1966)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

WILSON, Judge: Plaintiff's appeal for reappraisement relates to a shipment of blue and green woven fabric identified on the invoice as style 32731. This merchandise contains 70 percent wool, 23 percent hair, and 7 percent nylon. Blin & Blin of Elbeuf, France, hereinafter referred to as Blin, manufactured the merchandise and, thereafter, on or about October 25, 1957, exported it to the United States.

The invoiced and entered value of the fabric is 1,129.30 francs per meter, net packed, which plaintiff claims is the correct export value of such merchandise, as defined in section 402(d) of the Tariff Act of 1930 as originally enacted.

Appraisement was made on April 3, 1962, at 1,254.77 francs per meter, net packed, which defendant claims is the cost of production of the merchandise, as defined in section 402(f) of said act.

Counsel for the respective parties stipulated that there was no foreign value for such or similar merchandise as defined in section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, on the date of exportation. Furthermore, the plaintiff conceded that, at the time of exportation, there was no United States value for such or similar merchandise as defined in section 402(e) of the above amended act. That leaves for determination only whether cost of production used as the basis of appraisal by the defendant or export value as contended for by plaintiff should apply in this case.

The statutes under consideration read as follows:

Section 402 (d) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938:

EXPORT VALUE—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402 (f) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938:

COST OF PRODUCTION—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States;

and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Plaintiff offered the oral testimony of two witnesses and introduced in evidence four exhibits. Two of the exhibits are affidavits (exhibits 1 and 2). Exhibit 3 is a sample of the imported merchandise, style 32731, and exhibit 4 is an advertisement. Defendant offered in evidence two Treasury representative's reports (exhibits A and B).

Adolph Schuman, president of plaintiff corporation for 28 years, called as witness by the plaintiff, testified substantially as follows: Plaintiff manufactures women's coats, suits, and double knit suits

from fabrics obtained from many parts of the world. However, about 40 percent of the fabrics is imported from France. The plaintiff commenced importing piece goods from France in 1950 or 1951. Mr. Schuman is one of 17 experts on the Export Expansion Council of the United States Government (R.5–8).

As president of the plaintiff corporation, Schuman supervises or purchases all the fabrics from France and makes four to six trips there annually. He does not have an exclusive arrangement as to fabrics as Soufflet represents about 120 different manufacturers and stores throughout the world, including his firm, and Sarnoff, and Hattie Carnegie, in the United States. In offering its merchandise for sale Blin is alleged to quote prices from their official pricelist for guidance of prospective buyers. This was also true in 1957 and 1958. The witness identified a sample of style 32731 in blue imported in 1957. It was received as plaintiff's exhibit 3 (R.9–11).

Without objection plaintiff's exhibit 4, an advertisement of Blin in the Women's Wear Daily of Wednesday, June 26, 1963, announcing their opening for spring, was received in evidence. It shows a coat of arms of "BB—1822" and states: "BLIN & BLIN—Fabulous French Woolens—Now showing New Spring line Simultaneously at Blin & Blin S.A., 7, Rue Richepanse, Paris [and] Woolens From France Inc., 1441 Broadway, N.Y. 18, N.Y." (R.12–13.)

Schuman also testified that style 32731, as invoiced, is "an exclusive style number to me"(R.15), but that does not mean that the fabric is exclusive to him as almost all large wholesalers or purchasers carry an advertising number for each customer.

Under cross-examination Schuman testified that his garments contain the name of Lilli Ann Corporation and also a Blin label which says "Blin & Blin, material fabricated by Blin & Blin, Paris France" and "the content of the fabric by American law" (R.18).

George R. Reiter, plaintiff's sales manager, associated with them since November 1946, testified that his duties embrace overseeing and hiring salesmen and extensive traveling throughout the United States. He was very familiar with the involved merchandise (R.19–20).

Reiter further testified that, during 1957 and 1958, he saw Blin's fabrics that plaintiff uses or imports to make into coats and dresses being shown in "over 50 percent of the accounts on whom I called" (R.21). They had one fabric or another that they were using from Blin & Blin.

The testimony of Mr. Schuman and Mr. Reiter sheds little, if any, light upon the basic question before the court, what was the export value, if any, of the fabrics in question on the date of exportation?

Plaintiff's exhibit 1 is the affidavit of Claude Zimmern, sworn to on July 24, 1964. He has worked for Blin since 1930, became a director

general of the firm in 1948 and president in March 1963. As director general he was responsible for setting sales policies and prices at which the firm sold its goods. He was also in charge of the export department. He also designed fabrics and determined what dyes were to be used. He states that the firm is a manufacturer of high quality and novelty fabrics, basically wool, worsted and/or hair in different forms, which are usually made on slow moving looms for women's fashions. Blin's mill is in Elbeuf, France, which is 80 miles west of Paris, the latter place being a showroom "where all offers and sales in France are made." All fabrics made by Blin are given special hand finishing and "therefore differs from the less expensive classical fabrics" made by many fabricators in France and the United States.

Zimmern further alleges that Blin's policy always has been to limit its sales for use in France to only 10 or 12 wholesalers out of at least 150; that although there are over 200 manufacturers of cloth in France, only six to eight make this expensive high quality and novelty cloth such as can be sold for exportation to the United States.

Mr. Zimmern stated that, since 1954 or 1955 to the date of the affidavit, Blin has paid for an advertisement to run in the "Women's Wear Daily" in New York City in January and June of each year, the text never varying except that the advertisement in January referred to "New Fall Line," while the June advertisement referred to "New Spring Line." The advertisement appears in plaintiff's exhibit 4. In 1957, the quoted prices to prospective customers for delivery in France were the same general prices to each of them; the price did not vary because of quantity as quoted to plaintiff. Zimmern stated that only plaintiff purchased for delivery in France while *all* other prospective purchasers purchased from Blin's agent, "Woolens from France," after United States customs clearance. The agent placed an additional markup on the price over the cost of ocean freight, insurance, and duty, at which it sold to cover its selling expenses. The agent received no commission on sales made by Blin to plaintiff for delivery in France.

In plaintiff's exhibit 2, the affiant Albert Fracques asserts that he has been with the firm of Albert Fracques et Fils since 1927 and since 1945 has been its vice president and general manager. The factory is at Roubaix, France, and the firm maintains a showroom in Paris. The firm produces high quality novelty cloth made of wool, rayon, hair, and silk on slow looms, and it cannot be made on fast or automatic looms. He corroborated substantially the statements of Mr. Zimmern in exhibit 1. He further stated that, prior to September 1, 1957, his firm sold only to plaintiff for exportation to the United States, but there was no agreement, written or oral to sell to them exclusively. His firm offered the same fabrics to any United States

purchaser who cared to buy at its showroom in Paris on the same general conditions and prices as offered to plaintiff. Since the above date, his firm has also offered and sold its fabrics with duty paid after clearance through United States Customs, through its agent Mr. Len Artel of New York. He also confirmed in substantially the same language the statement of Zimmern as to the formula for setting prices.

Defendant's exhibit A, a report by Walter J. Pardaen, Treasury Representative, Acting in Charge, at Paris, France, is dated September 11, 1957, and relates to an inquiry he conducted on July 29, 1957, when he interviewed Claude Zimmern and Oscar Hurt, respectively director general and director of export sales of Blin. The report relates to sales by Blin to "Woolens from France Inc." of New York, and with earlier sales to plaintiff in which connection "It was further stated that the fabrics purchased by Lilli Ann were different in design, yarn, weight, and quality than [sic] those purchased by Woolens from France Inc." This quotation was reiterated and confirmed by Zimmern in defendant's exhibit B. The report makes no mention of the particular style number 32731 herein involved. However, defendant's exhibit B indicates that, while Blin and plaintiff have no formal contract granting exclusivity to plaintiff herein, they had a "gentlemen's agreement not to sell the same merchandise to anyone either in the United States or in France," and that Blin "Never" sold or offered the same merchandise in any market to anyone else. Therefore, Blin "did not list the quality numbers sold to LILLI ANN on its price lists," and "also accounts for the following statement on the manufacturer's invoices: 'I hereby certify that merchandise the same or similar to that described in this invoice is not sold or offered for sale in France for home consumption and that the merchandise is made solely for export.'"

Defendant's exhibit B further alleges that, because of "the aforementioned exclusivity and the nature of the merchandise sold to the San Francisco firm," the Treasury representative requested Mr. Zimmern to supply cost of production data, the former having acquainted the latter with the provisions of section 402(f) of the Tariff Act of 1930 and supplied him with a breakdown of the four principal elements according to C.A.D. 305 (*United States* v. *Alfred Dunhill of London, Inc.*, 32 CCPA 187). The cost of production figures were supplied by Zimmern and Hurt for the fabric quality numbers of particular interest to the San Francisco appraiser, the figures being verified and checked against the manufacturer's ledger accounts and other records. Included in said figures is the cost of production for style 32731 as follows: Cost of raw material including spinning of the yarn and transformation, 918 francs; general expenses, 101 francs; packing and freight from Elbeuf to Paris, 8 francs, and profit, 65 francs, making a

total selling or invoice price of 1,092 francs. The general expense figures were not obtainable for each quality of cloth and were computed "on a percentage basis." The profit is that realized on each particular quality of cloth, and is calculated on the sales price, less cost of material, etc., general expenses and packing and freight.

Defendant in its brief argues correctly that, on the present record, "plaintiff has failed to establish a statutory export value for merchandise such or similar to the imported woven wool fabric" (page 9).

It will be noted, *supra*, that the documentary evidence, exhibits A and B, offered by the defendant, cover investigations made of the exporter and reports thereof after consulting with Mr. Zimmern in September and November 1957, which is long *prior* to the date of appraisement, to wit, April 3, 1962. Plaintiff's documentary exhibits 1 and 2 were sworn to, respectively, on July 24, 1964, and October 9, 1964, which is long *after* the date of appraisement and long after the appeal for reappraisement was filed on May 4, 1962. Under such circumstances the evidence voluntarily given by the exporter shortly prior to and shortly after the date of exportation is entitled to greater credence than plaintiff's affidavit made several years later.

In defendant's exhibit A, Zimmern stated that the fabrics purchased by Lilli Ann "were different in design, yarn, weight, and quality than [sic] those purchased by Woolens from France Inc." This was reiterated and confirmed by Zimmern as reported in defendant's exhibit B. In plaintiff's exhibit 1 Zimmern stated that, in 1957, he personally offered spring lines to "several prospective buyers from the United States, both at BLIN & BLIN's showing room in Paris as well as when visiting the United States. Some of the American firms to whom your deponent freely offered the BLIN & BLIN lines of fabrics during the year 1957 were LILLI ANN CORPORATION in San Francisco, as well as MILSTEIN & CO., MONARCH GARMENT, SEYMOUR Fox and PETITE MISS, all in New York" (page 5). No document establishing the correctness of the foregoing is of record to show whether style 32731 was "freely offered" or whether what was said to be "freely offered" was of the same or similar design, yarn, weight, and quality as 32731, nor does the record show the price at which the fabric was so allegedly freely offered to others.

Zimmern stated he "Never" sold or offered for sale the same merchandise in any market to anyone other than Lilli Ann. He did not list the quality number sold to Lilli Ann on its price lists, and certified on the invoice in the case at bar, as well as on the manufacturer's invoices "* * * that merchandise the same as or similar to that described in this invoice is not sold or offered for sale in France for home consumption and that the merchandise is made solely for export." There is nothing to show that "merchandise the same as or

similar to that described in this invoice" was *freely* offered for sale and sold for export to the United States to *all* purchasers. The record is clear that Blin only sold direct to Lilli Ann for delivery in France and to Woolens from France, Inc., for delivery in the United States and to "some others." The sales to Woolens from France, Inc., were made as "seller to buyer," and they were not restricted in their resale price to American purchasers. But the sales to Woolens from France, Inc., were made because Blin's "products are of high quality and they felt that the latter company [Woolens] could better control the sale of their fabrics to reputable dealers who would not sell to consumers by advertising that they are selling garments of French material manufactured by Blin & Blin at a cheap price." (Defendant's exhibit A, page 2.) Other reasons are listed such as that the Woolens firm could easily contact the small garment manufacturers, furnish samples, and take orders. This arrangement was alleged to be advantageous to Blin as they need not keep numerous accounts of small United States concerns normally purchasing small quantities.

It is further noted that defendant's exhibit A states the principal market in 1957 for Blin's fabrics, where orders are accepted, is at the factory at Elbeuf, France, where the "company's only offices are located." The later affidavit of Zimmern, plaintiff's exhibit 1, made in 1964, states that the mill is at Elbeuf and that Blin has "a showing room in Paris, where all offers and sales in France are made." Thus, the evidence as to where the principal market actually was *at the time of exportation* of the instant merchandise is not made clear. By 1964, the principal market may have been at Paris.

What is apparent is that, in 1954, Blin set up "Woolens of France Inc." to sell their line *after clearance* through United States Customs. This apparently continued until 1957 and possibly later as shown by advertisements similar to plaintiff's exhibit 4 which states that Blin's fabrics are "showing" at Woolens from France, Inc., New York. In 1957, Blin offered to sell to several American firms. Only five, which includes the plaintiff, are mentioned in plaintiff's exhibit 1. Even assuming that the offers were freely made to five firms, it would not follow that this meets the requirements of the export statute under consideration with reference to merchandise which is "freely offered for sale to all purchasers" (section 402(d), *supra*). See also *United States* v. *American Glanzstoff Corp.*, 24 CCPA 35, T.D. 48308; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129. The alleged offer by Zimmern to "some" importers, without showing sales or evidence of sales to them, does not meet the standard for free offers to "all of those who cared to buy such goods" as held in *Rico, Inc.* v. *United States*, 48 CCPA 110, C.A.D. 773. As Woolens from

France, Inc., was allegedly selling in the United States, it is evident that more than five firms "cared to buy such goods."

Plaintiff's exhibit 4 does not cure the above situation. The advertisement heretofore quoted as it appeared in the Women's Wear Daily has no evidentiary value in the establishment of a statutory export value. It does not make reference to merchandise "such as or similar to" style 32731, or to any of the other style numbers sold to plaintiff as shown in defendant's exhibit B, or to the design, yarn, weight, and quality, which said exhibit B states are different from those purchased by Woolens from France, Inc. The advertisement is nothing more nor less than a "showing" of Blin's "Fabulous French Woolens" and makes no reference to prices at which the merchandise would be sold or freely offered for sale, either in France for delivery in France, or for delivery in New York by Woolens from France, Inc. To construe such advertisement as an "offer" to sell, without prices being shown, would be contrary to the appellate court's statement that "The courts may not properly supply from imagination the essentials in which the proofs are deficient." *United States* v. *Malhame & Co.*, 19 CCPA 164, 171, T.D. 45276.

Nor is the court of the opinion that plaintiff's exhibit 2, the affidavit of another manufacturer in France, establishes the statutory export value of Blin's fabrics.

Counsel for the respective parties make no reference in their briefs to cost of production other than it was the basis for appraisement. By statute, the appraisement is clothed with a presumption of correctness, 28 U.S.C., section 2633. See also *United States* v. *Collin & Gissel* (*Ludwig Baer*), 29 CCPA 96, 103, C.A.D. 176. To overcome such presumption, the appealing party must establish that the appraisement was erroneous and also establish its own claimed value. Failing in this burden the value ascertained by the appraiser remains in full force and effect. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495, citing cases. The Government need not prove the correctness of the appraised value unless and until the plaintiff has shown that the appraisement is erroneous. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502. However erroneous the appraisement might be, it remains in full force and effect. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593.

The testimony in this case is clearly insufficient to establish an export value for the involved fabrics.

Accordingly, on the record herein, the court finds as facts:

1. The imported merchandise consists of blue and green woven fabric identified as style No. 32731, which contains 70 percent wool, 23 percent hair, and 7 percent nylon.

2. The merchandise was manufactured and exported by Blin & Blin of Elbeuf, France. It was exported on or about October 25, 1957.

3. The merchandise was appraised on the basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930, as originally enacted, at 1,254.77 francs per meter, net packed.

4. Counsel stipulated that there was no foreign value for such or similar merchandise as defined in section 402(c) of the above act, as amended by the Customs Administrative Act of 1938. Plaintiff conceded that there was no United States value for such or similar merchandise as defined in section 402(e) of the above amended act.

5. The imported claims the correct dutiable value is 1,129.30 francs per meter, net packed, on the basis of export value, as defined in section 402(d) of the Tariff Act of 1930, as originally enacted.

I find as conclusions of law upon the record as presented:

1. That the plaintiff has not offered satisfactory evidence to make a *prima facie* case on the basis of its claimed export value.

2. That the presumptively correct appraised value on the basis of cost of production has not been overcome.

3. That cost of production, as defined in section 402(f) of the Tariff Act of 1930, as originally enacted, is the proper basis for appraisement of the merchandise here involved.

4. That such cost of production is represented by the appraised value of 1,254.77 francs per meter, net packed.

Judgment will be entered accordingly.