(R.D. 11297)

DESCOWARE CORP. (WESTLAND) v. UNITED STATES

Entry No. DE 26707.

(Decided May 4, 1967)

*Lawrence & Tuttle* and *Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.

*Barefoot Sanders*, Assistant Attorney General (*Sheila N. Ziff, S. William Barr,* and *Steven R. Sosnov*, trial attorneys), for the defendant.

WILSON, Judge: The imported articles covered by this reappraisement appeal consist of 11 separately identified items of enamelware which were manufactured in Brussels, Belgium, and exported therefrom on or about October 16, 1959. This merchandise is included in the final list promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

Counsel for the parties entered into the following stipulation relative to the value of 5 of the 11 items appearing on the invoice:

That with regard to the following items appearing on the invoice, the foreign value for such merchandise as defined by Section 402a(c)

as amended, at the time of exportation, are the unit values appearing opposite the listed items, plus 10 per cent Belgium tax, minus 40 per cent discount, plus the prorated part of the invoiced export packing. Such items are:

17/D  Covered Casserole, RC 22—170 Belgium Francs each.

7/A  Sauce Pans, SP 214—70 Belgium Francs each.

7/A  Sauce Pans, SP 21403—84 Belgium Francs each.

23/D  1200 Skillet [SK 28]—120 Belgium Francs each.

23/D  [480] Cast Cover [for Skillet CC 28]—95 Belgium Francs each.

I further offer to stipulate that with regard to the foregoing, there was no higher export value as defined by Section 402a(d) as amended, for such or similar merchandise at the time of exporation. [R. 3–4.]

Counsel further stipulated that there was no foreign value, export value, or United States value as defined in sections 402a (c), (d), and (e) of the above amended tariff act for the other six items appearing on the invoice consisting of items 81/A skillet SK 23; 81/C skillet SK 19; 7/A cast cover for saucepan CC 14; 81/A skillet SK 2303; 81/C skillet SK 1903; and 7/A cast iron cover for saucepan CC 1403, and that they are properly dutiable on the basis of cost of production as defined in section 402a(f) of the above amended tariff act, which was the basis for appraisement of said identified six items.

The only evidence introduced in this case is the affidavit of Octave Rary, plaintiff's exhibit 1, which was executed before an American Consul on February 3, 1966, at Brussels, Belgium, more than 6 years after the date of exportation. It was received as plaintiff's exhibit 1 subject to the right of the defendant to raise objections in its brief (R. 10).

The only question remaining for decision is whether the evidence in the record supports a statutory cost of production for the foregoing six identified items different from the presumptively correct cost of production returned by the appraiser (28 U.S.C. § 2633).

The statutory provision under consideration is section 402a(f) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, which reads as follows:

(f)  COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1)  The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2)  The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3)   The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4)   An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Plaintiff's exhibit 1 discloses that the affiant was the managing director of the exporter from June 1951 to April 1960 at which time he became its president. Mr. Rary further states that he is personally familiar with the sale of the firm's enameled cast-iron ware for home consumption and for export to the United States; and that as managing director he was personally familiar with the cost accounting of the various enamel cast-iron ware that the firm manufactured for home consumption and for export to the United States. Since 1951, sales to the United States have been limited to two purchasers and in more recent years to one purchaser. Such or similar merchandise was not freely offered for sale in the United States to other buyers. The iron handle skillets were first manufactured in late 1949 and 1950 for export only to the United States and were never sold for home consumption in Belgium. The skillets with wooden handles are sold for home consumption and are produced one piece at a time, whereas iron handle skillets and covers are mass produced in multiple cavity molds and, therefore, are manufactured at a considerably cheaper production cost than the wooden handle skillets.

The affiant further alleges that, during the latter half of 1959, the pricing of iron handle skillets for exportation to the United States "was so low that we were selling at a loss." He also sets forth that the cost of production figures which are stated in the affidavit "are taken from my copies of profit and loss statements and represent the actual costs to my company in the manufacture of the iron handle skillets during the latter half of 1959." He lists the cost of production of the six items contested herein under the following subdivisions:

1.  Raw materials and consumption materials—power—labor cost and their extensions—paying off of the equipment

2.  General expenses including foremen wages—staff wages—office expenses

3.  Cost of Packing and delivery F.O.B.

The affiant also asserts that one other named firm, located at Audenarde, Belgium, "is the only other manufacturer of enamelled cast-iron

ware *similar* to that manufactured by" the exporter, but adds "However, that firm to my knowledge did not make any of the iron handle skillets or cast iron covers such as we manufactured solely for export to the United States." [Emphasis supplied.]

Plaintiff's brief, page 3, alleges that, although exhibit 1 reveals that there was one other manufacturer of enamelware in Belgium, "that firm did not make any iron handle skillets or cast iron covers *such as involved herein*, therefore, following the case of *United States* v. *F. B. Vandegrift & Co. et al.*, 26 CCPA 360, 368, C.A.D. 42, the profit if any, made by the manufacturer herein, or in lieu thereof, at least the 8% minimum required by the statute must represent the item of profit in the statutory definition of cost of production." [Emphasis supplied.] In its "PROPOSED FINDINGS OF FACT," plaintiff calculates the 10 percent for general expenses and the 8 percent for profit based on the figures in the affidavit where the general expenses and profit as shown in the affidavit are less than those statutory requirements.

Defendant's brief, pages 4 and 5, alleges that the cost of production figures contained in plaintiff's exhibit 1 "are clearly insufficient for two reasons – 1. foremen's wages should have been included under section 402a(f)(1), *supra*, and not under section 402a(f)(2), *supra;* and 2. the allegations as to profits are conclusory and not evidentiary." The defendant also argues in its brief, pages 6 and 7, based upon certain definitions of the word "foreman," that such person "has a much more direct relationship to the processes employed in manufacture than to those 'usual general expenses' outlined in *Alfred Dunhill, supra*." (*United States* v. *Alfred Dunhill of London, Inc.*, 32 CCPA 187, C.A.D. 305.) In its argument, the Government also contends that the allegations of the affiant in plaintiff's exhibit 1 concerning alleged losses by the seller on goods shipped to the United States in the latter part of 1959, as well as the statements in such affidavit to the effect that while another firm manufactured similar enameled cast-iron ware it did not make iron handle skillets or covers such as the exporter manufactured for export to the United States, are mere conclusions which are not evidence of the type required to establish the alleged facts.

Plaintiff's argument that the other manufacturer did not make iron handle skillets or cast-iron covers *such as involved herein* is without merit for the affiant indicates that the *other* manufacturer made *similar* cast-iron ware. The statute section 402(f)(1) refers to *such or similar* merchandise, and section 402(f)(4) refers to profit in the case of merchandise of the *same general character* and to merchandise of the *same class or kind*. Hence, the *Vandegrift & Co.* case, *supra*, does *not* apply, thereby making it inappropriate to accept

the figures alleged in exhibit 1 or those figures calculating cost of production as stated in plaintiff's brief.

The court does not deem it necessary on the record herein to pass upon the questions raised by the defendant as to the sufficiency of the facts alleged in exhibit 1, or as to the proper placement of the foremen's wages or whether the allegations as to profits are conclusory and not evidentiary.

Suffice it to state that the affiant in exhibit 1 fails to state the basis for his allegations concerning the other manufacturer. He has taken cost of production figures from *his copies* of "profit and loss statements" rather than from authenticated books of the company. Cost of production figures giving details of the elements of cost of materials and consumption of materials, and paying off of the equipment, as alleged in exhibit 1, for the various six items in controversy, are rarely found in "profit and loss statements."

"Profit and loss" are defined as:

The gain and loss from business transactions, etc.: applied especially to a bookkeeping account at the close of a fiscal period: * * *. [Page 1163, college edition, Webster's New World Dictionary of the American Language. Copyright 1964 and prior.]

A summary account used at the end of an accounting period, to collect the balances of the nominal accounts, that the net profit or loss may be shown; often, any nominal account or statement of profit and loss. [Page 1976, Webster's New International Dictionary of the English Language, second edition—unabridged—1956.]

1. Gains and losses collectively in business transactions; in bookkeeping, an account in the ledger in which profits are entered on the creditor side and losses on the debtor side: used often in the phrase *put down to profit and loss*, referring to losses by bad debts, fraud, or accident. [Page 1979, Funk & Wagnalls New Standard Dictionary of the English Language, 1952.]

The affiant does not state who kept the books of the company, or who originally made the entries in the books of the company, or who prepared *his copies* of the profit and loss statements. Although he alleges familiarity with the cost accounting of the various enamel cast-iron ware manufactured by his firm, he does *not* allege that he is experienced in cost accounting as an accountant, or had charge of his firm's cost records, or that they were prepared by him or under his personal supervision. In any event, the mere fact that one has charge of the cost records does not entitle his statements respecting their contents to carry weight. *United States* v. *Philipp Wirth et al., Philipp Wirth et al.* v. *United States*, 24 CCPA 188, 193, T.D. 48654, citing *United States* v. *Brown & Co.*, 4 Ct. Cust. Appls. 102, T.D. 33374. He does not allege that he has personal knowledge of the facts alleged in his recital of the figures stated to be the cost of production

figures. Note *Chaffee* v. *United States*, 85 U.S. 516, referred to in the *Brown* case, *supra*.

I, therefore, conclude that the record here presented is insufficient to make out a *prima facie* case on the basis of cost of production different from that returned by the appraiser with reference to the six identified items in controversy, which said appraised values are by statute presumptively correct. (28 U.S.C. § 2633.) See *United States* v. *Collin & Gissel* (*Ludwig Baer*), 29 CCPA 96, 103, C.A.D. 176; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495, citing cases. The appraised values of said six items must remain in full force and effect. *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593.

I also conclude that there was no higher export value than the foreign value agreed upon for each of the five identified items as stipulated by counsel, said stipulation being accepted as one of fact.

Accordingly, on the record herein, the court makes the following findings of fact:

1. That the imported merchandise consists of 11 items of enamelware manufactured in Brussels, Belgium, and exported therefrom on or about October 16, 1959, and that said merchandise is included in the final list promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

2. That counsel stipulated the values for 5 of said 11 items on the basis of foreign value as defined in section 402a(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, there being no higher export value. The agreed values are those set forth below opposite the particular five items, plus 10 percent Belgium tax, minus 40 percent discount, plus the prorated part of the invoiced export packing, to wit:

| Item | Belgium francs, each |
|---|---|
| 17/D Covered Casserole, RC 22 | 170 |
| 7/A Sauce Pans, SP 214 | 70 |
| 7/A Sauce Pans, SP 21403 | 84 |
| 23/D 1200 Skillet, SK 28 | 120 |
| 23/D 480 Cast Cover for Skillet, CC 28 | 95 |

3. That appraisement of the other six identified items was made on the basis of cost of production as defined in section 402a(f) of the above amended tariff act, counsel having stipulated that there was no foreign value, export value, or United States value therefor, as defined in sections 402a (c), (d), and (e) of the above amended act, and that cost of production was the proper basis for determining the value for said six items.

4. That said six items consist of the following items appearing on the invoice, to wit: items 81/A skillet SK 23; 81/C skillet SK 19; 7/A cast cover for saucepan CC 14; 81/A skillet SK 2303; 81/C skillet SK 1903; and 7/A cast iron cover for saucepan CC 1403.

5. The evidence offered by the plaintiff is insufficient to warrant a finding of fact establishing a cost of production for the said six identified items different from the appraiser's finding of cost of production therefor.

I conclude as matters of law:

1. On the record, the value for each of the five identified items referred to in finding No. 2, *supra*, is the value as stated in said finding No. 2, *supra*, for each of said five items.

2. The evidence does not establish a cost of production for the other six identified items different from the appraiser's returned values on the basis of cost of production.

3. The importer has failed to make out a *prima facie* case on the basis of cost of production for said six items and the appraiser's returned values therefor are presumptively correct and remain in full force and effect. 28 U.S.C., section 2633, and cases cited herein.

Judgment will be entered accordingly.