ANDY MOHAN, INC.

v.

UNITED STATES.

C. D. 4593, Court No. R65/23570–2986.

United States Customs Court.
April 22, 1975.

Glad & Tuttle, Los Angeles, Cal., (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen. (Velta A. Melnbrencis, New York City, trial attorney), for defendant.

RE, Judge:

In this appeal for reappraisement the merchandise consists of men's custom-made suits, slacks, vests and a jacket, manufactured by Andy Mohan, Hong Kong. The articles were exported from Hong Kong on or about January 16, 1965 and entered at the port of Honolulu, Hawaii on January 20, 1965. They were appraised on the basis of constructed value, as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the invoiced unit values which were expressed in United States dollars, less 10.7 percent, plus 25 percent, packed.

Plaintiff concedes the applicability of section 402(d), as amended, as the proper basis of appraisement but contends that a lesser constructed value, expressed in Hong Kong dollars, should have been returned by the appraising officer for each item.[1]

Constructed value is defined in section 402(d) as follows:

> (d) Constructed Value.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—
>
> (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials

[1]. A description of the articles, and the constructed values claimed for each, are as follows:

| Order No. | Composition | Description | Constructed Value In Hong Kong Dollars |
|---|---|---|---|
| AMH 6449 | 55% Dacron 45% Wool | 1 Suit | 151.406 |
| AMH 6449 | Same | 1 Suit | 151.406 |
| AMH 6487 | Same | 1 Suit | 144.219 |
| AMH 6477 | Same | 1 Suit | 153.75 |
| AMH 6477 | Same | 1 Suit | 153.75 |
| AMH 6477 | Same | 1 Vest | 39.062 |
| AMH 6477 | Same | 1 Vest | 39.062 |
| AMH 6477 | Same | 1 Slacks | 50.625 |
| AMH 6477 | Same | 1 Slacks | 50.625 |
| AMH 3683 | 55% Terylene 45% Wool | 1 Suit | 167.50 |
| AMH 3690 | 100% Wool | 1 Jacket | 115.00 |

All plus the prorated share of the packing which comes to HK$3.00

are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

The statutory presumption of correctness that attaches to the appraisements requires that plaintiff not only establish error in the appraised value, but also that it prove the correctness of the claimed dutiable values. 28 U.S.C. § 2633, superseded by 28 U.S.C. § 2635 by virtue of the Customs Courts Act of 1970, Pub.L. 91–271; *Kobe Import Co.* v. *United States,* 42 CCPA 194, C.A.D. 593 (1955); *Kenneth Kittleson* v. *United States,* 40 CCPA 85, C.A.D. 502 (1952). Accordingly, plaintiff must establish each of the elements of its claimed constructed values as set forth in section 402(d), *supra. Bell Importing Co.* v. *United States,* 57 Cust.Ct. 552, R.D. 11196 (1966).

The parties are in agreement that the amount to be added for general expenses and profit (sec. 402(d)(2)) is equal to 25 percent of the cost of materials and fabrication. Thus, the question before the court is whether plaintiff has estab-lished the costs of material, fabrication and packing for each item of wearing apparel. Sec. 402(d)(1) and (3).

The present issue has been previously litigated in *Andy Mohan, Inc.* v. *United States,* 63 Cust.Ct. 601, R.D. 11682 (1969), and the record of that case has been incorporated herein.

The 1969 *Andy Mohan* case also dealt with men's custom-made clothing manufactured by Andy Mohan, Hong Kong. It was exported from Tokyo, Japan on January 19, 1965 and entered at Honolulu by plaintiff herein. The articles, like those at bar, were also appraised at invoice unit values, less 10.7 percent, plus 25 percent, packed, on the basis of constructed value. The parties had stipulated that the ordinary addition for overhead and profit was a sum equal to 25 percent of the costs proved to be material and labor. Thus, plaintiff had to make the same showing of proof in the incorporated case as it must now make as to its claimed constructed values.

At the trial, in the earlier case, plaintiff offered the testimony of Mr. Andy Mohan, owner of Andy Mohan, Inc., and 16 exhibits. Judge Landis, who presided at the trial summarized the record as follows:

"Andy Mohan, president of the Honolulu firm, and owner of Andy Mohan, Hong Kong, testified on trial. He described the operation of his Honolulu and Hong Kong business, which he set up and supervises. An Andy Mohan numbered order form (the order number becomes the reference number on the return Hong Kong invoice) is used to take customers' orders in Honolulu. On the order form are noted the customer's name, his measurements, the type of material to be used in making up the order and the delivery date. The order form is then sent to the Hong Kong office which notifies the tailor to come to the office in order to note the order and pick up the material from stock. The tailor comes to the Hong Kong office, copies down the measurements

from the order, and a notation is made on the order form of the number of yards of material taken by the tailor for the particular order. A swatch of the material is attached to the order form which is kept in the files of the Hong Kong office." 63 Cust.Ct. at 603.

Judge Landis found that there was no substantial evidence on which the court could rely to support plaintiff's proposed constructed values, stating:

" * * * I am of opinion that Andy Mohan's original orders for the suits, slacks, and shirt, tied as they are to the customs entry invoice by reference to the order number, are admissible as business records made in the regular course of business. 28 U.S.C., section 1732. The invoice for services and the sales invoices for materials are properly admissible on the question of what it cost to buy the materials and make these suits, slacks, and shirt. The exhibits weigh but little on this record in view of what I ascribe to be Mr. Mohan's vague and indefinite testimony, best illustrated by what he said it cost him to fabricate and pack the imported items of clothing.

"Asked what he paid in Hong Kong dollars for packing the imported items, Mr. Mohan stated that he paid one Hong Kong dollar for the box and that with 'the thread, and everything, about, roughly, it cost me [Mr. Mohan] about a dollar-forty, dollar-fifty, something like that.' (R. 12). That is all the record says about packing and for me it is much too uncertain and indefinite to rely on. When questioned about what he paid the tailor to make the suits and slacks, Mr. Mohan stated that he had the bills with which he paid the tailor. Plaintiff's counsel elected not to offer the bills in evidence at that time, and elicited from Mr. Mohan testimony that he paid the tailor eighty Hong Kong dollars for fabricating the imported suits. (R. 16.) The paid bills would, of course,

have been the best evidence of what Mr. Mohan paid. Counsel never did move the bills in evidence and this, read with Mr. Mohan's rather loose testimony about what Mr. Mohan paid the tailor for the slacks, moves me to give the testimony little weight. Mr. Mohan testified that slacks had 'a few prices. Some are 20 dollars, Hong Kong, some are cheaper. Wool is higher a little bit than cotton, and there was dacron.' (R. 17.) Three of the imported slacks are invoiced as made of dacron-wool material. One slack is invoiced as made of dacron-cotton. The following, transcribed of record, is what I am asked to rely on in constructing a value for the slacks:

Q. Would you look at the invoice, and would you tell me whether or not the slacks noted thereon were slacks of dacron, or slacks of wool, or slacks of cotton?—A. Only the last slacks is dacron-cotton.

Q. So that for all but the last slack, what did you pay the tailor in Hong Kong dollars?—A. Hong Kong dollars?

Q. Yes.—A. Fourteen Hong Kong dollars.

Q. Pardon?—A. Fourteen Hong Kong dollars, and eighteen Hong Kong dollars.

Q. I thought you said you paid twenty Hong Kong dollars, too?—A. If it's a dac's style. All wool slacks, I pay twenty Hong Kong dollars. [R. 17.]

"It is unnecessary to cite all the pages in the record where the testimony is of the same general tenor. I do not propose to find constructed values on what it 'roughly' cost Mr. Mohan to pack the items or on cost figures for fabrication from which I can only surmise which figure is correct. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495

(1952). Were I to do that, I would have to do what the court of appeals warned against, 'supplying from imagination facts without a substantial basis in fact. *United States v. Malhame & Co.*, 19 CCPA 164, T.D. 45276 (1931).'" 63 Cust.Ct. at 603–04.

Plaintiff contends that the evidence of record in the pending case, together with the relevant testimony and exhibits from the incorporated case, have overcome the deficiencies of proof cited by Judge Landis, and are sufficient to establish its claimed constructed values.

At the trial, plaintiff offered two exhibits; the defendant offered five exhibits, and called Mr. Andy Mohan as a witness for cross-examination purposes based on his testimony in the incorporated case.

Exhibit 1, an affidavit executed by Mrs. Gopi T. Samtani on March 30, 1972, states that Mrs. Samtani is Andy Mohan's sister; and that she has been managing the Hong Kong office of Andy Mohan, Inc., which is in the custom-made clothing business, since 1960. She is in complete charge when he is away. Her duties include "doing" the accounts, receiving and processing the orders sent from Andy Mohan, Inc. in Honolulu, and shipping the finished garments to Honolulu. "Doing" the accounts includes "keeping a strict report of all expenses", which includes the cost of fabrics, tailoring and packing.

The tailoring work is subcontracted out to tailors in Hong Kong. She, however, supplies the outer fabric, which may be purchased by her brother or herself. The copies of the orders she receives from her brother indicate the measurements, articles to be made, and type of fabric to be used. She notes on the copy the number of yards of fabric given to the tailor for the particular article to be made, and, if available, a swatch of the fabric. To cover her overhead expenses, she adds 10 percent to the cost of the fabric before calculating the final price of the article to which she adds another 10 percent markup.

In her affidavit Mrs. Samtani states that all of the articles in the instant shipment were made by Arta's Clothes. She states that, "from my accounts which I personally keep", she knows that in December 1964 and January 1965, Arta's charges, which included furnishing buttons, zippers and lining, were HK$78 for a suit consisting of a jacket and slacks, HK$18 for slacks, HK$60 for a jacket, and HK$20 for a vest.

Mrs. Samtani also stated that, "as shown by the accounts" which she "personally kept in the regular course of business", the shipment at bar was packed in a simple box which cost HK$2 for the box and packing paper, and HK$1 for the string and gum tape.

Based on her 10 years' experience with the firm, the tailors to whom she subcontracts the work have taken no more than two weeks to finish any article of men's clothing.

During December 1964 and January 1965 the cost of the fabric that she delivered to the tailors varied slightly depending on the quality purchased. According to her accounts, which she "personally kept", her firm paid HK$15 per yard for fabric of the quality of 55% dacron and 45% wool used in the men's clothing listed on order numbers AMH 6449 and AMH 6447, HK$13 per yard for the quality of 55% dacron and 45% wool used in the suit shown on order number AHM 6487, HK$16 per yard for fabric of the quality of 55% terylene and 45% wool used in the suit listed on order number AMH 3683, and HK$16 per yard for fabric of the quality of 100% wool used in the formal jacket shown on order number AMH 3690.

From her experience, a suit, consisting of a jacket and slacks, requires from $2\frac{7}{8}$ to $3\frac{1}{4}$ yards of fabric for regular sizes; a vest usually requires $\frac{3}{4}$ of a yard, and slacks require from $1\frac{3}{8}$ to $1\frac{1}{2}$

yards. Her copies of the orders covering the shipment in issue show that the following number of yards were delivered to the tailor:

| | | |
|---|---|---|
| AMH 6487 | one black suit | 2⅞ yards |
| AMH 6477 | one grey suit with vest | 3¾ yards |
| AMH 6477 | extra grey slacks | 1½ yards |
| AMH 6477 | one black suit with vest | 3¾ yards |
| AMH 6477 | extra black slacks | 1½ yards |
| AMH 3683 | one black suit | 3½ yards |
| AMH 3690 | one formal jacket | 2 yards |

Since her brother, Andy Mohan, requested her copy of AMH 6449 several years ago, she was unable to state the yardage delivered to the tailor for the suits covered by that order.

Exhibit 2, an affidavit executed on September 5, 1971, by Mr. Leung See Hing, principal official of Arta's Clothes in Hong Kong, states that he did the billing. From December 1964 through January 1965 his firm's "making charge" for clothing made of dacron and wool, terylene and wool, or all wool was HK$78 for a suit, consisting of a jacket and slacks, HK$18 for slacks, HK$60 for a jacket, and HK$20 for a vest. These charges included furnishing the buttons, thread, zippers and lining cloth. The outer fabric was always supplied by Andy Mohan, Inc. when it placed orders with Arta's Clothes. During this same period his firm was able to complete delivery of each garment to Andy Mohan, Inc. within one week of receipt of the fabric.

Mr. Mohan testified that he purchased most of the fabrics for his firm. He bought them in varying quantities from wholesalers and retailers in several countries, and their prices varied according to quality, quantity and fashion demand. He also indicated that the cost of the same fabric might vary weekly or monthly depending upon availability and other factors.

He agreed that synthetic fabrics used in men's suits vary in quality. He identified exhibit A, a swatch of fabric, as a mixture of polyester and wool, which differed in texture and was of better quality than, exhibit B, a fabric swatch he characterized as having "more wool and, possibly, some kind of mixture." He was unable to identify another fabric swatch (exhibit C).

The witness agreed that incorporated exhibit 16, an invoice dated December 16, 1964, which was made out to Andy Mohan for 86¼ yards of grey, navy blue and blue English terylene and wool fabric at HK$16 per yard, was a typical invoice from a fabric supplier to his firm. He stated that he could not identify the weave of that material from the invoice "because there is [sic] various kinds."

Mr. Mohan testified that the records made in the regular course of business of his Hong Kong and Honolulu firms during the last quarter of 1964 and during 1965 consisted of initial order forms, invoices for fabric, invoices from tailors, the daily cash books, customs invoices and correspondence. However, except for some documents received as exhibits in the incorporated case, and copies of customer order numbers AMH 6383, 6390, 6449, 6477 and 6487 (collective exhibit E) covering nine of the garments in the present case, the witness was unable to produce any business records or documents of the Andy Mohan Hong Kong office for the relevant period. With the exceptions noted, Mr. Mohan explained that, since his Hong Kong office does not carry its records "more than three years", all of these records had been destroyed.

Incorporated exhibit 4, relied upon by plaintiff, appears to be another copy of AMH 6449, which indicates that 2⅞

yards of dacron and wool fabric were used to make each of the two suits therein which were part of the present shipment. Incorporated exhibit 12, also cited by plaintiff, is an invoice dated December 12, 1964, made out to Andy Mohan, Hong Kong, for 45 yards of dacron and wool fabric (percentage content and color not shown) at HK$10.50 per yard and 69¼ yards of terylene and wool fabric (color not indicated) at HK$16 per yard.

Plaintiff relies upon the Samtani and Hing affidavits which, it claims, coupled with exhibits 4, 12 and 16 and the testimony of Mr. Mohan, as summarized by Judge Landis in the incorporated case, remedy the deficiencies of proof in the earlier case and establish the values claimed for the articles at bar.

Notwithstanding the zeal and vigor with which plaintiff's counsel has pursued his client's cause, the court nonetheless, upon review of the entire record, is constrained to find that plaintiff has failed to meet its burden of proof.

In value cases, particularly where cost of production (section 402a(f), Tariff Act of 1930) or constructed value is in issue, the evidence offered by the parties, especially the cost records and related documents, has always been subject to careful scrutiny by the court. See e. g., *Frank P. Dow Co., Inc., et al.* v. *United States*, 276 F. Supp. 1013, 59 Cust.Ct. 697, R.D. 11370 (1967), *modified by stipulation*, 60 Cust.Ct. 758, R.D. 11469 (1968); *Descoware Corp. (Westland)* v. *United States*, 58 Cust.Ct. 698, R.D. 11297 (1967); *General Wool Co., Inc., et al.* v. *United States*, 56 Cust.Ct. 730, R.D. 11177 (1966), *aff'd*, 60 Cust.Ct. 970, A.R.D. 240 (1968). All elements of a claimed statutory value, whichever it may be, must be established by substantial competent evidence. *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593 (1955); *Brooks Paper Co.* v. *United States*, 40 CCPA 38, C.A.D. 495 (1952).

Thus, under the constructed value formula, plaintiff must establish by appropriate evidence the cost of containers and wrapping as well as the costs of material and of fabrication. It is settled that the two last named costs must be based on the costs of material and labor that would have been incurred at the latest time which would normally permit the manufacturer of the articles under consideration for delivery on January 16, 1965, the date of export. *Charles Stockheimer, Inter-Maritime Forwarding Co., Inc.* v. *United States*, 44 CCPA 92, C.A.D. 642 (1957); *Andy Mohan, Inc.* v. *United States, supra*.

The record herein, however, not only fails to rectify the evidentiary deficiencies cited by the trial court in the incorporated case but also creates ambiguities, and reveals unexplained discrepancies in the testimony.

For example, in attempting to establish the cost of fabricating the garments, Mr. Mohan had testified in the earlier case, which was heard in March 1968, that he paid the tailor 80 Hong Kong dollars for making a suit, and either 20, 18 or 14 Hong Kong dollars for slacks, depending upon the fabric content. However, in September 1971, Mr. Leung See Hing, the principal officer of the tailoring firm, stated in his affidavit (exhibit 2) that from December 1964 through January 1965 his firm charged HK$78 for a suit and HK$18 for a pair of slacks, regardless of the fabric content. Yet Mr. Mohan, testifying at the January 1973 trial of this case, reiterated his previous statement that during the two-month period in question he had paid the tailors HK$80 for making a suit. At no time was the variance between his testimony at both trials, and that of the affiant as to the cost of fabricating the articles, ever explained. As Judge Landis had noted, the paid bills would "have been the best evidence of what Mr. Mohan paid" (63 Cust.Ct. at 604). Nonetheless, although the witness indicated that they were available, they

were not introduced into evidence, nor were they offered at the present trial.

Mrs. Samtani also testified in her March 1972 affidavit (exhibit 1) to the prices paid the tailoring firm during the period in issue for making garments of the kind at bar, stating that she knows these figures *"from my accounts which I personally keep"*. Those accounts, however, were nonexistent in 1972 as the Hong Kong office did not retain its records for more than three years. The court has been given no explanation how Mrs. Samtani was able to construct the details of the varying cost items attached to her 1972 affidavit from records which, according to Mr. Mohan, had been destroyed four years earlier. Hence, her testimony can be accorded but little weight.

The same difficulty exists as to the cost of packing. Mrs. Samtani's assertions as to the cost of the box, packing paper, string and gum tape used in packing the shipment at bar were based on "the accounts I personally kept in the regular course of business". Without further explanation as to when and how she examined those records, which Mr. Mohan was unable to produce under subpoena, because they were no longer in existence, the court cannot give her statements any credence. The same may be said of Mrs. Samtani's statements as to the quality of the fabrics used in the imported garments and their costs. The invoices for fabrics (inc. exhs. 12 and 16), relied upon by plaintiff, are of little help in establishing the costs of the materials actually used in these articles.

Apart from the foregoing discrepancies, the present record is defective in another respect. The testimony offered as to costs of fabrication and of packing consists solely of conclusory statements which are totally unsupported by evidentiary facts. The following statements from the case of *Brooks Paper Company v. United States*, 40 CCPA 38, C.A.D. 495 (1952) are pertinent:

"* * * 'Evidentiary facts' must be found from the testimony or other evidence. 'Ultimate facts' are reasoned conclusions drawn from the evidentiary facts. *Commissioner of Internal Revenue* v. *Sharp et al.*, 91 F.2d 804, C.C.A. 3. Considered with reference to the facts or evidence by which they are established or proved, 'ultimate facts' are but the logical results of the proofs, or, in other words, mere conclusions of fact reached by the processes of logical reasoning from the evidentiary facts. * * *

"The Supreme Court has defined 'substantial evidence' as evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence, said the Court further, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U.S. 292, 59 S.Ct. 501, 83 L.Ed. 660.

"Under this test of substantial evidence we think it clear that a mere declaration of an essential ultimate fact in issue is not substantial evidence. * * * it seems clear that ultimate facts cannot at the same time also be the facts which afford a substantial basis of fact from which the fact in issue can be reasonably inferred. * * *" 40 CCPA at 45.

To the same effect, see *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593 (1955).

The Samtani affidavit is palpably deficient in that it is based upon records which were destroyed four years earlier. The Hing affidavit fails to provide the court with those evidentiary facts upon which the stated conclusions are based. The affiant's assertions about transactions which took place over six years earlier are unsupported by any reference

to books of account, price lists, letters, invoices or other documents.

▮▮ In short, the present record fails to meet the evidentiary standard of proof required by the applicable judicial authorities. *Brooks Paper Company* v. *United States,* 40 CCPA 38, C.A.D. 495 (1952). See also *General Wool Co., Inc., et al.* v. *United States,* 56 Cust.Ct. 730, R.D. 11177 (1966), *aff'd,* 60 Cust.Ct. 970, A.R.D. 240 (1968).

In view of the court's findings it is unnecessary to deal with those aspects of plaintiff's case stressed in defendant's brief. Likewise, it is unnecessary to treat plaintiff's alleged failure to make information available to defendant pursuant to a request for production.

For the foregoing reasons, the appraised values are affirmed, and the appeal for reappraisement is dismissed. Judgment will be entered accordingly.