**JAIME IMPORTS, INC.**

v.

**UNITED STATES.**

**Entry Nos. 100919 and 107943; R.D. 11627.**

United States Customs Court.

Feb. 6, 1969.

---

3. This exhibit bears a date of May 1961.

Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Owen J. Rader, New York City, trial attorney), for defendant.

WILSON, Judge:

The above two appeals for reappraisement were consolidated for trial. The merchandise consists of human hair wigs #140 and human hair wiglets #101. Both of these items were imported in varying shades and at different prices, as shown in the following schedule:

| Reap. No. | Exported | Merchandise | Invoiced & entered prices | Appraised values | NOTE: |
|---|---|---|---|---|---|
| R66/435 | 7/22/64 | Wigs #140 | $17  $20  $29 | less 2.3% for air freight<br>$20  $23  $30 | Invoiced entered & appraised values depend on shade |
| R66/2220 | 3/2/64 | Wigs #140 | less $81.61 for air freight<br>$17  $20 | less $81.61 for air freight<br>$20  $23 | |
| R66/2220 | 3/2/64 | Wiglets #101 | $6  $7  $9 | $7  $8  $10 | |

The articles involved were exported by the manufacturer, Les Cheveux Modernes of Paris, France. Counsel stipulated that the merchandise is not on the final list promulgated by the Secretary of the Treasury in 93 Treas.Dec. 14, T.D. 54521, and that the proper basis for appraisement is export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165.

The plaintiff contends that the invoiced and entered prices were the prices at which the wigs and wiglets were freely offered and sold for export to the United States. The defendant contends that the appraised values represent the only *freely offered prices* at which *all* purchasers could buy; that there is no one price at which the wigs and wiglets are "freely sold" as defined in the statute, and that it is necessary, therefore, to look to the prices at which this merchandise was "freely offered."

The following statutes must be considered:

Section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the ·merchandise in condition, packed ready for shipment to the United States.

Section 402(f) (1) (A) of said amended act:

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions * * *.

\* \* \* \* \* \*

(5) The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

The evidence for the plaintiff consists of the oral testimony of one witness, a price list dated July 3, 1964, issued by the exporter (exhibit 1), an affidavit (exhibit 2) by Mr. Jean Jacques Laval, general manager of the exporter since March 1964, and a copy of a typical order from plaintiff to the exporter dated January 24, 1964 (exhibit 3). The defendant offered a customs representative's report dated August 11, 1964 which was received as exhibit A. The official court papers were received in evidence without being marked. Upon this record the case was submitted.

Mrs. Henry Lihn, plaintiff's only witness, testified that she is the owner and manager of Jaime Imports, Inc., which since 1961, has imported human hair wigs and wiglets from Europe and sold them throughout the United States, pri-

marily in southern California, at wholesale. A wig covers the full head, and a wiglet is a small piece used in conjunction with a woman's hair. Mrs. Lihn went to Paris in 1963 and again in 1965 to see the manufacturer. She ordered the merchandise by mail, placing one or two orders of various groupings for 600 to 700 pieces per month. She obtained from and paid to the exporter quoted prices. Said prices appear in the price list, exhibit 1. The witness stated that she had no written contract with the exporter and that all transactions with said exporting firm were by mail and were based upon an oral agreement. She discussed prices of new models with Mr. Laval as they became available and they had correspondence with reference to her orders. She identified Mr. Laval's signature on the affidavit, exhibit 2, which was received over defendant's objection. Mrs. Lihn stated that the oral agreement with Laval provided that he would not sell to another firm within the State of California as long as she was able to use all his production. He was not, she said, able to fill Jaime's orders completely and sent partial shipments; she usually received less than 500 pieces when she ordered 600 to 700 items. Mr. Laval never indicated that she was getting a better price than that for which he sold to others. She produced copies of several orders and one of them, alleged to be typical, was received as exhibit 3 to illustrate the type of order she sent to the exporter when ordering these goods.

Under cross-examination, Mrs. Lihn testified that she never received discounts for quantities purchased, the price being the same regardless of quantity purchased; that she did not inquire and does not know whether the exporter shipped to others in the California area or whether all sales they made were at the prices charged her when he made sales to others than this importer. She did not bargain, she said, for prices of new designs but paid the exporter's quoted, or offered prices. She testified that she made no suggestions as to other prices for various makes and models.

Mrs. Lihn also stated that the prices indicated in exhibit 2, page 6, for wig style #140, third grouping, was limited to shades indicated in the price list as shades #70, 73 and 75 at $29; that exhibit 2 includes a blend of several shades in group 3 of # 140 at a slight differential in price depending upon the amount of light hair used to mix with other shades but the prices are not shown in the original price list, exhibit 1. She stated that all of the sales listed on pages 6 and 7 of exhibit 2 were sold directly to her.

Under redirect examination she testified that she would have to check the original invoices to ascertain whether she ever paid $26 or $30 for wig #140, third grouping; that she did not know whether she was Laval's only United States customer when he listed the sales in exhibit 2, but that all sales therein under the third grouping were purchases she made; that if the price was too high as quoted she would write Laval and would not purchase if she felt she could not resell in the United States at a competitive price. This never happened as "we never changed prices with Mr. Laval." Counsel stipulated that importer does not have exclusive purchases in California of this exporter. The defendant offered the report, exhibit A, plaintiff's counsel waiving certification reserving relevancy and objections for brief. In rebuttal Mrs. Lihn testified that she had been acquainted with Mme. Laval Bouyer since 1963 personally and through correspondence; that she was the original manager of the exporter. (She signed two letters dated December 30, 1963 and January 21, 1964 which are part of exhibit A.) Mrs. Lihn also stated that Mme. Bouyer and her husband started the exporting company and that her son Jean Jacques Laval became manager about 1964 or 1965 when his father died.

As heretofore noted herein, plaintiff's exhibit 1 is the exporter's price list dated July 3, 1964. It states prices at which Mrs. Lihn testified that the importer allegedly purchased.

Exhibit 2, which is Laval's affidavit, states that as general manager he is in charge of the selling policy and therefore has "personal knowledge of the selling prices and sales practices, as well as cost of production of the various articles sold by my company whether for home consumption or for exportation to the United States"; that his firm in 1964 and 1965 "freely offered these wigs and wiglets to anyone who cared to buy them for exportation"; that he only sold to four United States firms during that period; that he had no written or oral agreement limiting his sales to those four firms; that his firm was free to sell such merchandise to anyone who cared to buy; that sales of wigs #140 in 1964 were made at different prices due to difference in quantity purchased; that smaller quantities were higher in price except for two accommodation sales of third shade grouping early in 1964. The affidavit includes a list of sales at $6 for wiglets #101 of first shade grouping, at $7 for second shade grouping, and $9 for third shade grouping. Except for 7 sales at $20 per wig #140 in 1964 the list shows 33 sales at $17 for first shade grouping. Except for 7 sales at $23 per wig #140 in 1964 the list shows 32 sales at $20 for second shade grouping. Except for 2 sales each at $26 and $30 in 1964 the list shows 15 sales at $29 for third shade grouping. Mr. Laval alleges that in the ordinary course of business his firm keeps a record of sales of wigs and wiglets under his supervision and that the records from which the foregoing were taken "were kept in the ordinary course of business under my supervision."

Exhibit 3 is a photostat of an order dated January 24, 1964 which Mrs. Lihn alleges is typical of others and illustrates orders placed by plaintiff with this exporter. It is an order for 205 wiglets #101 for quantities of 10 or 15 pieces of varying colors which are indicated by color numbers which conform with color numbers in exhibit 1.

Exhibit A is a customs representative's report dated August 11, 1964 and relates to his visit with Mr. Jacques Laval, manager of the exporter, on August 4, 1964. Mr. Laval explained that the firm is a small manufacturing company with a limited production capacity; that his export capacity for the United States is sufficient to cover only the needs of one regular customer, Jaime Imports of Los Angeles; that he only accepts orders from other United States customers when the needs of Jaime have been filled and he has enough production time left over to fill a few small orders (according to the testimony of Mrs. Lihn and Laval's shipments (exhibit 2) to the United States, the exporter could *not* entirely fill all of the importer's orders). Laval also stated that the price list of July 3, 1964 (exhibit 1) which has been in effect since July 1963, "is not a general price list; it applies only to Jaime and was arrived at by bargaining. It is strictly adhered to for all sales to Jamie." Mr. Laval informed the customs representative that the price lists attached to exhibit A to three other incidental United States customers, one each located in California, Florida and New York, were based "on individual negotiations with the buyer," and he admits that when dealing with these incidental buyers, he raises the price as much as the market will bear in order to make a quick one-time profit without regard to obtaining future orders which he might not be able to fill anyway in view of his commitments to Jaime; his steady market is Jaime Imports and, he admits, he would refuse to sell to other United States buyers, if he had to, to retain this one customer. The prices at which the merchandise was offered to the California and Florida firms, as shown in the letters to those firms, dated respectively January 21, 1964 and December 30, 1963, part of exhibit A, are indicated as $20, $23 and $30 for wig #140 of shades shown in exhibit 1 respectively as $17, $20 and $29. For wiglet #101 to the Florida firm the prices are shown as $7, $8 and $10, whereas for the same shades the prices are respectively $6, $7 and $9, as shown in exhibit 1. These

prices to the California and Florida firms are equal to the appraised values exclusive of air freight. It is observed that exhibit 2 shows purchases on the same day January 13, 1964 of 20 wigs #140 at $17 and at $20 for first shade grouping. Similar variations are also shown on January 13, 1964, for wigs #140 of other shade grouping during, and also for particular months in 1964.

The plaintiff contends that the record is clear that the *list of sales* in exhibit 1 (that exhibit is *only a price list* and plaintiff evidently intended to indicate the *list of sales* in exhibit 2) represents "freely" sold transactions and in any event that "the manufacturer herein freely sold to Jaime Imports, the plaintiff herein." Plaintiff's brief in that connection cites National Carloading Corp. v. United States, 43 Cust.Ct. 531, Reap.Dec. 9535, affirmed on Government appeal, 46 Cust.Ct. 745, A.R.D. 125, and W. J. Byrnes & Company v. United States, 50 Cust.Ct. 406, Reap. Dec. 10451, appeal by the Government withdrawn and dismissed, 50 Cust.Ct. 574, A.R.D. 158.

In *National Carloading Corp., supra,* the court stated, at page 534, that a manufacturer might offer his products to *all* purchasers who care to buy, and his entire output might be taken by one purchaser, but that such fact does not establish that he *offered* his merchandise *only* to the eventual buyer or that the ordinary course of trade was to offer and sell only to one buyer. On the record in the case at bar it is clear that the exporter sold to *other* United States buyers than this plaintiff. During 1964 the exporter offered and sold to other United States buyers at prices higher than to this importer, as well as for home consumption in France, such latter sales or offers or prices or color grouping not being disclosed of record.

The facts in the *Byrnes* case, *supra,* are different from the facts in the case at bar, and, therefore, do not control or warrant a similar conclusion herein. In the cited case, fishhooks were sold to wholesalers and manufacturers at list prices less certain quoted discounts throughout the United States. Sales were limited to two commission merchants having exclusive territories in Western United States. These merchants made no objection to the plaintiff therein who continued to sell to a "few old customers" in their territories. Sales to the so-called "old customers" were made at the list prices *without* the quoted discount, and at lesser discounts because of the *special circumstances,* due to their previous customer relations. The court, therefore, held such sales were *not* sales in the ordinary course of trade. The court held that the majority of sales were at list prices less quoted discounts and represented the export value or the price at which the merchandise was freely offered and fairly reflected market value, rather than the old customers' prices.

In the cases at bar, there are no special circumstances and no prior relationship shown between the exporter herein and the alleged purchasers in the United States other than the instant importer. Moreover, Mrs. Lihn testified that she obtained and paid quoted prices from the exporter, while Mr. Laval informed the customs representative (exhibit A) that the price list of July 3, 1964 (exhibit 1) has been in effect since July 1963 and is not a general price list; that it applies *only* to Jaime and *was arrived at by bargaining.* Mrs. Lihn testified that prices were not arrived at by bargaining. She also stated that an oral agreement with Laval provided that he would not sell to another firm within the State of California as long as she was able to use his production; that Laval was not able to meet her orders completely and sent partial shipments, usually 500 pieces when she ordered 600 to 700 pieces. Mr. Laval's affidavit (exhibit 2) states that in 1964 his firm "freely offered" wigs and wiglets such as sold to Jaime to "anyone who cared to buy them for exportation." It is not clear whether he sold to purchasers in France who were required to export such merchandise for exportation. He does state that he sold to four Amer-

ican importing firms; that he had no agreement written or oral, which limited his sales to these four firms, and that the exporter was free to sell such merchandise to anyone who cared to buy. This runs counter to what Mrs. Lihn testified to as to an oral agreement with Laval. Mrs. Lihn testified that she paid the prices as per price list (exhibit 1) and also that she purchased and paid the prices, even those shown to differ in price as shown in exhibit 2. When asked whether she paid $26 and $30 for wig #140 she said she would have to check her records. Plaintiff's counsel stated he was satisfied with such record when the presiding judge asked whether the record should be checked.

On examination of the listed sales in exhibit 2 it was disclosed that as to wig #140, second shade grouping, sales were made in January 1964 of four pieces at $20 while sales of 19, 3 and 2 pieces were made at $23. Sales at prices other than $20 for wig #140, second grouping, were made at other times in 1964. This is also true as to wig #140, third grouping, where in January 1964 sales were made of 28 and of 18 wigs at $29, whereas other January 1964 sales were made of 11 and of 4 wigs at $26. One of the sales was made at $30 on April 15, 1964 and another on July 7, 1964. The record does not disclose a single price list at which the product was offered or sold to all purchasers at wholesale and at which any purchaser could buy. Prices differed whether to the instant importer or others in the United States.

The list of sales, as shown in exhibit 2, discloses the following schedule of 1964 sales:

| Month | Wiglets #101 | Wigs #140 | Total for month |
|-------|--------------|-----------|-----------------|
| January | 0 | 187 | 187 |
| February | 115 | 379 | 494 |
| March | 90 | 257 | 347 |
| April | 27 | 179 | 206 |
| May | 0 | 106 | 106 |
| June | 702 | 314 | 1016 |
| July | 0 | 493 | 493 |
| August | 0 | 0 | 0 |
| September | 0 | 173 | 173 |
| October | 122 | 269 | 391 |
| November | 0 | 385 | 385 |
| December | 55 | 231 | 286 |
| Totals | 1111 | 2973 | 4084 |

Mrs. Lihn testified that she ordered between 600 and 700 pieces monthly in 1964. However, she did not offer evidence to establish that as factual. Exhibit 3 allegedly is a *typical* order, dated January 24, 1964. It does not show prices for the 205 wiglets #101 for each of the 18 different colors ordered. The prices for these particular 18 colors as indicated in the Jaime price list, exhibit 1, when multiplied by the quantity of each color shown in exhibit 3, disclose a total of 95 at $6; 75 at $7; and 35 at $9

for an overall total of $1410. Said exhibit 3 alleges that Jaime was enclosing a check for $2000, but it fails to show whether it is to cover the said 18 colors and/or other items. In any event the $2000 is substantially more than required for the 18 colors at the prices shown in exhibit 1.

The inconsistencies between Mrs. Lihn's testimony and the statement of Mr. Laval in exhibit 2, as well as Laval's statement to the customs representative, exhibit A, are irreconcilable, and leave

much to be desired for setting aside the presumptively correct values found by the appraiser.

There are other factors which prompt the court to hold that the plaintiff has failed to make a *prima facie* case in support of its contentions sufficient to overcome the presumptive correctness of the appraisements. 28 U.S.Code, section 2633. Garbey v. United States, 24 CCPA 48, T.D. 48332; United States v. Freedman & Slater, Inc. (Household Utilities Mfg. Corp.), 25 CCPA 112, 118, T.D. 49241; Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.) v. United States, 28 CCPA 19, C.A.D. 118; Sears, Roebuck & Co. et al. v. United States, 31 CCPA 36, 42, C.A.D. 246; United States v. Robert Reiner, Inc., 35 CCPA 50, 56, C.A.D. 370.

There is no evidence that the price list, exhibit 1, was circulated to the trade. It appears to be addressed *only* to Jaime, dated July 3, 1964. According to exhibit A, Mr. Laval stated it was *not* a general price list and applied *only* to Jaime and was arrived at by *bargaining*. The latter exhibit also contains so-called price lists to other United States purchasers at prices higher than prices to Jaime, as shown in exhibit 1. There is therefore no substantial evidence to support the prices for which plaintiff contends. The affidavit, exhibit 2, contains mere conclusions which are not supported, and is not substantial evidence. See Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495, and Morris Friedman v. United States, 52 Cust.Ct. 660, A.R.D. 178. When exporter fails to circulate a price list to the trade and there is no evidence affirmatively that either exhibit 1 or the prices in the two letters, part of exhibit A, were circulated in the trade, such price lists do not establish a free offering. Judson Sheldon International Corporation v. United States, 51 Cust.Ct. 374, Reap.Dec. 10586, affirmed Same v. Same, 54 Cust.Ct. 773, A.R.D. 183.

Where a purchaser obtains favorable prices which others do not receive, such prices are not freely sold or offered prices to all purchasers. A selected purchaser's prices do not establish an export value where the evidence fails to show those prices fairly reflect market value and where merchandise was freely sold or offered for sale at *less* favorable prices. F. B. Vandegrift & Co., Inc. v. United States, 56 Cust.Ct. 715, R.D. 11169, affirmed Same v. Same, 60 Cust.Ct. 965, A.R.D. 239. In the case at bar *other* purchasers allegedly paid *higher* prices.

Mr. Laval asserts in exhibit 2 that his firm freely offered "to anyone who cared to buy them for exportation." There is no evidence which indicates to what firms in France such offers were made or the quantities or prices at which such offers were made. Sales or offers for home consumption and costs of production are properly to be considered in ascertaining whether prices fairly reflect market values. C. J. Tower & Sons of Niagara, Inc. v. United States, 57 Cust.Ct. 601, R.D. 11212, affirmed Same v. Same, 60 Cust.Ct. 938, A.R.D. 233. Prices to selected purchasers cannot be used in absence of evidence that such prices fairly reflect market values, and negotiated prices are the equivalent to bargaining and cannot be accepted for appraisement purposes. Arthur J. Humphreys v. United States, 57 Cust.Ct. 638, R.D. 11225.

Though Mr. Laval has been with the exporter for about 20 years his duties or titles during that period are not shown in exhibit 2, except that he has been its general manager since March 1964 and prior thereto its "departmental manager of the fabrications." He asserts that as general manager he is in charge of the selling policy of that firm and allegedly has "personal knowledge of the selling prices and sales practices, as well as the cost of production of the various articles sold by my company whether for home consumption or for exportation to the United States." Thus, apparently sales or offers for home consumption may be presumed from the foregoing, but there is no specific evidence of actual

home consumption sales or offers for sale. He alleges that in the ordinary course of business his firm keeps a record of sales of wigs and wiglets "under my supervision and the records from which the following list of sales was taken were kept in the ordinary course of business under my supervision." He does *not* allege personal knowledge and familiarity with the records and could not so allege as to sales in January, February and part of March 1964 when he became general manager. Without familiarity and personal knowledge, his affidavit, exhibit 2, is entitled to little, if any, probative weight. Frank P. Dow Co., Inc., et al. v. United States, 59 Cust. Ct. 697, R.D. 11370, involving constructive value. Note amended judgment in 60 Cust.Ct. 758, R.D. 11469.

Mr. Laval does not state who originally made the entries in the manufacturer's books, or who had actual personal knowledge thereof, or who compared the sales he listed with the books for accuracy in copying. The mere fact that he had charge of the cost records does not entitle his statements respecting their alleged contents to carry weight. General Wool Co., Inc., et al. v. United States, 56 Cust.Ct. 730, R.D. 11177, affirmed Same v. Same, 60 Cust.Ct. 970, A.R.D. 240. The trial court in the cited case cited United States v. Wirth et al., Wirth et al. v. United States, 24 CCPA 188, 193, T.D. 48654, which cited United States v. Brown & Co., 4 Ct.Cust.Appls. 102, T.D. 33374. In the *Brown* case, *supra*, a manager who did not make the entries and had no personal knowledge of the facts, was said to be an incompetent witness to prove the entries.

█ Because of the inconsistencies noted, *supra*, and the failure of plaintiff to make a *prima facie* case because of a lack of probative evidence on behalf of plaintiff, the plaintiff has failed to offer evidence warranting setting aside the appraised presumptively correct values, 28 U.S.Code, section 2633, and such values remain in full force and effect. Kobe Import Co. v. United States, 42 CCPA 194, 198, C.A.D. 593.

On the record herein, I, therefore, make the following findings of fact and conclusions of law:

I find as facts:

1. The merchandise under consideration in these two appeals for reappraisement consists of three shade groupings each of human hair wigs and wiglets, respectively #140 and #101, which were exported by the manufacturer, Les Cheveux Modernes of Paris, France, on July 22, 1964 and March 2, 1964.

2. Said merchandise is not on the final list promulgated by the Secretary of the Treasury in 93 Treas.Dec. 14 T.D. 54521.

3. The appraisements were made on the basis of export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295 T.D. 54165, which basis of appraisement is conceded by plaintiff to be the proper basis for appraisement purposes.

4. That at the time of exportation the manufacturer did not sell or freely offer for sale, such or similar wigs and wiglets to all purchasers at a uniform price, and arrived at the selling prices by negotiations or bargaining.

5. That by reason of many inconsistencies between Mrs. Lihn's testimony and the statements of Mr. Laval in exhibit 2, as well as his statements to the customs representative, exhibit A, which are irreconcilable, the plaintiff has failed to make a *prima facie* case at its claimed values on the basis of export value.

I conclude as a matter of law:

1. Export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas.Dec. 295, T.D. 54165, is the proper basis for appraisement purposes.

2. Plaintiff has failed to overcome the presumption of correctness of the appraiser's finding of values. 28 U.S. Code, section 2633.

3. The appraised values on the basis of export value of all merchandise in both

reappraisement appeals must remain in full force and effect. Kobe Import Co. v. United States, 42 CCPA 194, 198, C.A.D. 593.

Judgment will be entered accordingly.