(R.D. 11741)

Kaysons International, Ltd. v. United States

(Decided May 4, 1971)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Bernard J. Babb* and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

WATSON, Judge: This appeal for reappraisement places in issue the valuation of certain six-transistor radios which, together with batteries, gift boxes and spare parts, were exported from Taiwan in November 1965. The importation was appraised on the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. The official papers show that the radios were appraised at $2.45 per set together with a prorated share of the invoice charges for packing, inland freight, insurance, customs clearance and warehouse. The batteries, gift boxes and spare parts were appraised at the invoiced unit price together with a prorated share of the above invoice charges.

Plaintiff agrees that the correct statutory basis of appraisal is constructed value but claims that said value should be $2.07 per radio. The parties have stipulated that the merchandise in question is not on the final list of the Secretary of the Treasury issued pursuant to the Customs Simplification Act of 1956; that the country of exportation is Taiwan; and that the China Electric Manufacturing Co., Ltd., was the sole producer of six-transistor radios in Taiwan selling for shipment to the United States at the time of exportation herein. In sum, the sole dispute herein relates to the proper appraised value of the six-transistor radio portion of the importation.

The relevant statutory provision reads as follows:

Section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

> For the purposes of this section, the constructed value of imported merchandise shall be the sum of—
>
> > (1) the *cost of materials* (exclusive of any internal tax applicable in the country of exportation directly to such

materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) *and of fabrication or other processing of any kind* employed in producing such or similar merchandise, at *a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;*

(2) *an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind* as the merchandise undergoing appraisement which are made by producers *in the country of exportation,* in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States. [Emphasis supplied.]

The record consists of the testimony of three witnesses, the official papers, a copy of the purchase order covering the instant importation, three affidavits and a copy of a subpoena duces tecum.

Plaintiff's first witness was the appraising official responsible for making the appraisement of the entry involved herein. He testified that the radio, battery, gift box and spare parts were all appraised separately. The packing, inland freight, insurance, customs clearance and warehouse charges were then prorated for each of the four items. The sum of $0.35 was then added for the element of general expenses and profit required by section 402(d)(2).

Plaintiff's second witness was Mr. Aaron D. Kay, president of the importer herein. He testified he negotiated the purchase of the instant importation entirely with the Tokai Wireless Co., Ltd., of Shizuoka, Japan and agreed to take delivery from Taiwan. He had no agreement or connection with the assemblers of the involved radios in Taiwan. At the request of Tokai, he paid for the merchandise by a letter of credit in two parts, one going to Japan and one going to the Taiwan assembler, covering the assembly charges. The assembler of the radios in Taiwan was Shang Hwa Electric Works Co., Ltd.

Plaintiff's third witness was Mr. Perry J. Spanos, the senior customs representative in Hong Kong from 1964 to 1969. He testified that as a result of his investigation of the question of the usual addition for general expenses and profit in the manufacture of six-transistor radios in Taiwan, the sum of $0.35 was added by the China Electric Manufacturing Co., Ltd., in the manufacture and sale of such radios to the United States. The record supports the view that the sum of $0.35 was subsequently expressed as 9.16% of the cost of materials and

fabrication and that percentage represents the element of general expenses and profit required by section 402(d)(2).

Exhibit 1 consists of an affidavit signed by Mr. Hiroshi Suzuki the chief of the 4th Section of the Business Department of Tokai Wireless Co., Ltd. Mr. Suzuki indicates that he was responsible for the organization of the Taiwan assembly operation and was directly involved in all the transactions concerning the importation herein.

In a second affidavit, placed in evidence as exhibit 2, Mr. Suzuki provides information regarding the production costs of the importation involved herein. The relevant portion of his answer is as follows:

1. The break-down of the Price for Model No. 624, 6 transistor, of "RALEIGH" Brand Radio, included in the Kaysons Order No. 2327 was stated as follows:—

| | |
|---|---|
| Cost of the Radio Parts_____ | US$1. 70 |
| Ocean Freight (From Japan to Keelung) _____ | " 0. 0125 |
| Insurance _____ | " 0. 003 |
| Packing Materials purchased in Taiwan_ | " 0. 0145 |
| Assemble Charges in Taiwan_____ | " 0. 30 |
| Overhead Expenses in Japan_____ | " 0. 20 |
| Profit _____ | " 0. 07 |
| F.O.B. Taiwan Port per set_____ | US$2. 30 |

2. The above figures were obtained by our shipping documents and our books kept under our supervision.

Exhibit 3 consists of an affidavit of Mr. T. M. Chen, the chief of engineering of Shang Hwa Electric Works Co., Ltd., of Taiwan. He indicated that his firm did not own the Japanese parts from which the transistor radios were assembled and that the charge for assembling the six-transistor radios involved herein, together with battery and gift box, was $0.3145 per unit. Mr. Chen further stated that for ease of customs clearance in Taiwan, his firm represented itself as the seller on the customs documents. He stated that his firm had no connection or agreements with plaintiff herein.

Exhibit 4 consists of purchase order number 2327 placed with Tokai Wireless Co., Ltd., which resulted in the shipment involved herein.

Plaintiff claims it has adduced sufficient evidence to prove that the constructed value as found by the appraising official is incorrect and sufficient evidence to warrant a finding of constructed value in accordance with its computations. These computations are developed as follows:

We begin with the cost of the importation parts as set forth in exhibit 2 as $1.70. This, however, includes the cost of the battery, gift box and spare parts, hereinafter referred to as the three undis-

puted components. In order to arrive at the cost of materials of the radio alone, we must remove the cost of the three undisputed components. We take the appraised value of the three undisputed components, $0.09, $0.03 and $0.03 respectively (without their prorated shares of charges). This figure of $0.15, however, contains a portion of Tokai's general expenses and profit set down in exhibit 2 as $0.27. Consequently, the portion of profits attributable to the three undisputed elements must be subtracted from the sum of $0.15 to arrive at their true cost of materials. Since the three undisputed components comprise 6.6% of the $2.27 invoice value for the entire importation (again without pro rata charges), they contain 6.6% of the $0.27 general expenses and profit set forth in exhibit 2. This equals $0.0178 and when deducted from the $0.1500 leaves a cost of materials for the undisputed elements of $0.1322.

At this point, we note that all the figures used to derive the percentage which the three undisputed components represent of the total value, are appraised figures except for the $2.27 figure for the radio alone. That figure was raised to $2.45 by the appraising official. By using the lower invoice figure, the cost of the three undisputed components occupies a larger portion of the total cost. The profit attributable to them becomes a larger figure thus reducing the deduction for the cost of the three undisputed components and increasing the cost of material of the disputed radio. This operates to the detriment of the plaintiff since it would be in its interest to *decrease* the cost of materials of the disputed radio. Consequently, I do not consider the use of the invoice figure of $2.27 in these computations to be erroneous for the purpose of generating a percentage to express the value of the three undisputed components.

After arriving at the sum of $0.1322 for the cost of the three undisputed elements and deducting it from the cost of materials and transportation totaling $1.7155 (as set forth in exhibit 2) we reach the figure of $1.5833 for the cost of materials of the radio alone. To this we add the undisputed assembly charge of $0.30 making a total of $1.8833.

The packing charge expressed in exhibit 2 as $0.0145 becomes $0.0135 after deducting the 6.6% attributable to the three undisputed components. Adding this to the previous total, we reach a sum of $1.8968.

The evidence of Mr. Spanos, together with the stipulation that China Electric Manufacturing Co., Ltd., is the sole producer of such radios for sale to the United States establishes that the amount usually added for general expenses and profit by the firm was $0.35 per unit, expressed as a percentage of 9.16% of the cost of materials and fabrication. Applying this figure to the sum of $1.8968, we arrive at an

amount of 17.37 cents for general expenses and profit and a grand total of $2.0705. At this point we can eliminate the last two digits and express the figure of $2.07 as plaintiff's version of the constructed value of the radio portion of the importation in dispute.

Defendant has introduced no evidence in this case and has contented itself with attacking the adequacy of plaintiff's proof on a number of grounds. Defendant first attacks the proof of cost of materials on the ground that it does not establish that Tokai Wireless Co., Ltd., is indeed the manufacturer herein and hence the cost of materials it supplies may not be the cost of materials required by section 402 (d) (1).

I am of the opinion that Tokai Wireless Co., Ltd., was indeed the manufacturer of the merchandise in question. It retained control and dominion over the parts during the entire process of assembly and manufacture. It owns the parts. It was responsible for delivery and the satisfaction of the contract of sale. The fact that it subcontracted the assembly of the ratios and requested the payment of the assembly charge by a separate letter of credit to the assembler, does not detract from its role as a manufacturer. It supplied the essential constituents of the manufactured product, supervised the process of manufacture and was intimately involved in the entire sale and manufacture of the instant merchandise. *Lionel Trading Co., Inc.* v. *United States*, 24 CCPA 432, T.D. 48900 (1937); *United States* v. *Pacific Customs Brokerage Co. for Munising Wood Products Co., Inc.*, 32 Cust. Ct. 675, A.R.D. 44 (1954).

Defendant alleges that there is no proof that the cost of materials offered by plaintiff is that cost at the latest time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business. The ramifications of this requirement have been admirably explicated in the case of *Charles Stockheimer, Inter-Maritime Forwarding Co., Inc.* v. *United States, United States* v. *Charles Stockheimer, Inter-Maritime Forwarding Co., Inc.*, 44 CCPA 92, C.A.D. 642 (1957). In that case, the Court of Customs and Patent Appeals held that the statute calls for the cost of materials at the last date on which they could have been purchased for use in the importation in question. I am of the opinion that plaintiff's proof conforms to this requirement and that it appears that the cost of materials involved was not determined as of a date inappropriately distant from the time of manufacture. Plaintiff has come forward with proof regarding the cost of materials in a transaction which appears to be in the natural and regular course of manufacture and this is sufficient to establish a *prima facie* case. In this

context it is insufficient for defendant to merely allege that the time at which cost of materials was taken was inappropriate.

Defendant objects further to the sufficiency of the affidavits by which plaintiff has attempted to prove the costs of materials. It cites such things as the absence of any indication that Mr. Suzuki was in charge of the company's record keeping or personally supervised the books and records, etc. Such objections, whatever their validity, go to the weight of the affidavits and not to their admissibility. It may be true that in some cases little weight should be given to affidavits which do not possess the details which plaintiff demands. See for example *Jaime Imports, Inc.* v. *United States*, 62 Cust. Ct. 798, R.D. 11627, 295 F. Supp. 307 (1969); *Descoware Corp.* (*Westland*) v. *United States*, 58 Cust. Ct. 698, R.D. 11297 (1967). In this case, however, I give great weight to the affidavit of the man charged with the responsibility for overseeing the production of the importation involved and I do not deem it disqualifying if certain averments are not present in the affidavit. In this respect I adhere to the view that the weight to be given to an affidavit is within the province of the trial judge and I attempt to exercise that discernment necessary to recognize substantial proof when it is presented. *Veolay, Inc., J. E. Bernard & Co., Inc.* v. *United States*, 23 CCPA 101, T.D. 47766 (1935), certiorari denied 297 U.S. 711 (1936).

Defendant has raised additional objections to a number of other points concerning plaintiff's proof, such as an allegation that the cost of supervisory staff supplied by Tokai to the assembler, as indicated in exhibit 2, should be part of the cost of material and fabrication element of constructed value. I am of the opinion that such expenses are more properly includable as part of Tokai's general expenses and profit. Since, as far as the statutory provisions for constructed value are concerned, Tokai's general expenses and profits are not relevant to the constructed value of the instant importation, the cost of supervisory staff is not relevant to the issues herein.

Defendant also cites as a defect in plaintiff's proof, the absence of an attribution of the cost of transporting the merchandise from the assembler's place of business to the port of exportation. I am of the opinion that such charges do not comprise a portion of the expenses covered by section 402(d)(3), that is to say, are not part of the cost of containers and coverings and the expenses incidental to placing the merchandise in condition ready for shipment. They, too, properly belong to the general expenses of the Tokai Wireless Co., Ltd., an amount which is not relevant herein since the statute expressly limits consideration of general expenses and profit to that in the country of exportation; Taiwan in this case.

Defendant makes a number of other objections all of which are founded on the alleged inadequacy of the plaintiff's proof of cost of materials. Since I am of the opinion that plaintiff has adequately proven the cost of materials, unsupported objections based on a contrary supposition are without merit.

In conclusion, I note that defendant has raised objections to the use of pro rata attribution and apportionment in arriving at the elements of cost of materials of the disputed radio and in computing the constructed value. I can find no support for the view that mathematical calculations utilizing figures derived from the appraised value, applied in a logical and consistent manner to figures found to be adequately proved and in no way favoring either party, are not appropriate in deciding an issue such as that herein. As indicated previously, the only invoice figure utilized which was not also an appraised value, was the invoice figure for the six-transistor radio and that operated to plaintiff's detriment in the calculations.

In light of the above I conclude that plaintiff has successfully disproved the appraised value found by the appraising official and has proved the correctness of the value which it claims. I therefore make the following findings of fact:

1. The imported merchandise herein consist of six-transistor radios exported from Taiwan during November of 1965.

2. The merchandise was appraised on the basis of constructed value as defined in section 402 (d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3. The merchandise does not appear on the final list of the Secretary of the Treasury, T.D. 54521.

4. Said merchandise was manufactured by the Tokai Wireless Co., Ltd., of Japan.

5. Said merchandise was assembled in Taiwan.

6. The cost of the materials and fabrication of said merchandise is $1.8833 per radio.

7. The cost of packing of said merchandise is $0.0135 per radio.

8. The usual amount for general expenses and profit reflected in sales of merchandise of the same class or kind in the country of exportation is a sum expressed as 9.16% of the cost of materials and fabrication, in this instance $0.1737.

In addition to the above, I reach the following conclusions of law.

1. Constructed value as defined in section 402 (d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement of the merchandise involved herein.

2. The constructed value of the six-transistor radio involved herein is $2.07.

3. The constructed value of the batteries, gift boxes and spare parts herein is the appraised values.

Judgment will be entered accordingly.